UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LISA COOLEY, LLC

                Plaintiff,                No. 20-cv 5800 (VEC)

V.

THE NATIVE, S.A.,

                Defendant.

## MEMORANDUM OF LAW IN OPPOSITION TO ORDER TO SHOW CAUSE SEEKING ENTRY OF A DEFAULT JUDGMENT

The defendant, The Native, S.A. ("Defendant"), through its counsel Zukerman Gore Brandeis & Crossman, LLP, appearing specially for the limited purpose of challenging personal jurisdiction and service of process, submits this memorandum of law in opposition to the application by plaintiff, Lisa Cooley, LLC ("Plaintiff"), by order to show cause, for a default judgment.

### PRELIMINARY STATEMENT

Defendant is a Swiss company not subject to jurisdiction in New York. Plaintiff has not even attempted to serve Defendant in accordance with any recognized method of service. Instead, Plaintiff improperly relies entirely upon a purported guarantee (the "Unauthorized Guarantee"), a document in which Defendant supposedly submitted to jurisdiction and agreed to alternate means of service of process.

The Unauthorized Guarantee cannot subject the Defendant to jurisdiction, and cannot authorize alternate means of service, because the Unauthorized Guarantee was not signed by authorized representatives of the Defendant. Under Swiss law, in order to bind the Defendant corporation, a purported agreement must be signed by *two* duly authorized representatives. This requirement is publicly stated in the applicable Swiss Commercial Register of companies.

It is undisputed that the Unauthorized Guarantee only bears one signature of any representative of Defendant. Moreover, it appears that even that single signature was applied to the Unauthorized Guaranty without the knowledge or approval of Defendant's board of directors.

Because the Unauthorized Guaranty lacks the required two signatures, it is a legal nullity. Consequently, that document cannot establish any submission to jurisdiction, or waiver of service, on the part of the Defendant. Plaintiff's effort to employ a contractually-created method of service of process also fails, since the provision upon which Plaintiff relies does not bind the Defendant.

All of these defects were known to counsel for the Plaintiff before this motion was filed. Nevertheless, Plaintiff has failed to articulate any cognizable basis to overcome this fundamental defect in its case.

## ARGUMENT

"It is well established that default judgments are disfavored." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2d Cir.2001). A "clear preference exists for cases to be adjudicated on the merits." *Id.* Default judgments are, therefore, "reserved for rare occasions" and any "doubt[s] should be resolved in favor of the defaulting party." *Enron Oil Corp. v. Diakuhara*, 10 F3d 90, 96 (2d Cir. 1993). An application for a default judgment must be denied if a defendant shows "good cause" for the default. Courts evaluate whether "good cause" exists by considering: (a) whether there are any meritorious defenses to plaintiff's claims; (b) whether the default was willful; and (c) whether the plaintiffs would be prejudiced by the denial of the motion for default judgment. *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981); *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 243 (2d Cir. 1994).

Here, the Defendant can demonstrate a meritorious defense. Defendant has no obligation to appear in this action due to improper service and lack of personal jurisdiction. Defendant's default was also not "willful." To the contrary, Defendant has a good faith, correct belief that it is not required to appear in this litigation. Indeed, for that reason, it appears now only specially

2

for purposes of making this point. And, of course, the same reasons that invalidate personal jurisdiction would also invalidate the Unauthorized Guarantee itself, if that issue were ever reached and if Defendant ever chose to oppose the case on the merits. Nor could there be any prejudice to Plaintiff, since the case was only recently commenced. Plaintiff, on its part, has not even attempted to argue any prejudice.

## I.     THE NATIVE HAS A MERITORIOUS DEFENSE

Before a court grants an application for a default judgment, it must assure itself that it has personal jurisdiction over the defendant and that the defendant was properly served. *Bhutan Int'l Festival, Ltd. v. Eden Project*, 17-CV-8980 (VEC), 2018 WL 6329402, at *5 (S.D.N.Y. Dec. 3, 2018) (Judge Caproni). It is axiomatic that a "default judgment may not be granted ... if the defendant has not been effectively served with process." *Garrido v. Klainberg*, 16-CV-9464 (RA), 2020 WL 1082566, at *3 (S.D.N.Y. Mar. 6, 2020) (citation omitted); *RCC Ventures, LLC v. Brandtone Holdings Ltd.*, 1:17-cv-1585-GHW, 2017 WL 3242331, at *2 (S.D.N.Y. July 28, 2017) ("A court may not properly enter a default judgment unless it has jurisdiction . . . which also means that he must have been effectively served with process"); *Crawford v. US Sec. Assocs.*, 19 Civ. 105 (PGG) (RWL), 2020 WL 61171, at *4 (S.D.N.Y. Jan. 6, 2020) ("[n]umerous courts have ruled that ineffective service of process, standing alone, satisfies the 'good cause'" standard) (internal quotation marks omitted). When seeking a default judgment, it is the Plaintiff who has the burden of proving that service was adequate. *Garrido v. Klainberg*, 16-CV-9464 (RA), 2020 WL 1082566, at *3 (S.D.N.Y. Mar. 6, 2020).

Plaintiff has not attempted to serve the Defendant with process under the Federal Rules of Civil Procedure or New York CPLR. Instead, Plaintiff attempts to show proper service relying solely on an unenforceable clause that purports to allow service by mailing the complaint to this law firm. Plaintiff also has not attempted to establish any basis for personal jurisdiction over Defendant, other than claiming that Defendant agreed to submit itself to the jurisdiction of this Court under the Unauthorized Guarantee. Both of these arguments fail because the clauses of the Unauthorized Guarantee that Plaintiff relies upon are not enforceable against Defendant.

3

Under Swiss law, every corporation must be registered in the Swiss Commercial Register. (Eich Dec. ¶ 6).[1] The Swiss government maintains the Swiss Commercial Register to give the public important information regarding Swiss companies, including the names of those individuals who are authorized to act as representatives for the companies, and any restrictions on such individuals' authority, such as the need to act through *two* authorized signatures. (*Id.* at ¶ 9). Swiss companies may only be bound by persons registered with the government as agents, and that registration information is readily available to third parties in the online Swiss Commercial Register. (*Id.* at ¶¶ 9, 10, 13). One of the main functions of the Commercial Register is to give public access to information regarding commercial entities to protect third parties, and arm third parties with the tools they need to properly engage in authorized transactions with Swiss entities. (*Id.* at ¶¶ 8, 9). Third parties that enter into transactions with Swiss entities without consulting the publicly available information maintained in the Commercial Register do so at their own peril. (*Id.* at ¶ 12).

In 2009, the Defendant first registered with the Swiss Commercial Register. (*Id.* at ¶ 6). In 2018, when the purported guarantee was executed, the Defendant's data on the Commercial Register clearly required that any agreement purporting to bind the company must bear *two* authorized signatures. (*Id.* at ¶ 15, Exh. A). The purported guarantee only bears one signature. Consequently, it cannot bind the Defendant. In dealing with a Swiss company, Plaintiff had the responsibility to look to the Commercial Register to determine what signatures were required to bind the Company. The fact that Plaintiff entered into an unenforceable guarantee because it failed to do so is thus a problem of the Plaintiff's own making. The information demonstrating that two signatures were required to bind the company was readily available to the Plaintiff.[2]

---

[1] A declaration from a Swiss attorney, Christian Eich, describing applicable Swiss law and the public disclosures made by the Defendant regarding the requirement that two signatures are required to bind the company is being submitted with this opposition brief. That declaration is referred to herein as the "Eich Dec."

[2] Many Swiss entities require two signatures to bind the company. Among anyone who deals with Swiss companies, this fact is well-known. Moreover, for anyone who cares to look, there are many articles available online regarding the dual signature requirement. Many of these articles

4

It is also significant that the one representative of the Defendant that did sign the guarantee, Sergey Skatershchikov, did so on his own and without the knowledge of any other member of the company's board of directors. Indeed, the Defendant's current board of directors did not even know about the Unauthorized Guarantee until after this lawsuit had been filed. And, significantly, Mr. Skatershchikow stepped down from his position on the board and ceased his relationship with the Defendants within a few months after signing the Unauthorized Guarantee.

Filed with this opposition is a declaration from, Serge Umansky, who was the Vice-Chairman of Defendant's board when the Unauthorized Guarantee was executed by Mr. Skatershchikow. Mr. Umansky's declaration confirms that the Defendant had no knowledge of the Unauthorized Guaranty until after Plaintiff commenced this litigation. (Umansky Dec. ¶¶ 4, 7). Given this lack of actual authority and the lack of apparent authority – due to, among other facts, the disclosures in the Commercial Register – there is no basis for binding the Defendant to the contractual method of service, the choice of forum provision, or the submission to jurisdiction, all of which appear in the Unauthorized Guarantee.

In *Greene v. New Dana Perfumes Corp.*, 287 B.R. 328 (D. Del. 2002), the United States District Court of the District of Delaware decided a case that is directly on point. The plaintiff in *Greene* had asserted a breach of contract claim for unpaid severance under an employment agreement. *Id.* at 330. Plaintiff attempted to argue that the Court had specific jurisdiction over the defendant because one of its alleged agents had signed the employment agreement at issue.

---

reference a well-known English decision discussing the requirement. The English court ruled that whether a company had validly executed a contract was to be determined according to the laws of that company's place of incorporation. As a result, under Swiss law, the agreement was not enforceable because it had not been executed by two representatives of the company, which was required based on the company's disclosures in the Swiss Commercial Register. A single officer had no authority acting on her own to bind the company. *See, e.g.,* Allen & Overy, *Applicable law for whether a contract has been validly executed by a foreign company*,(April 20, 2015), https://www.allenovery.com/en-gb/global/news-and-insights/publications/applicable-law-for-whether-a-contract-has-been-validly-executed-by-a-foreign-company (Article Regarding *Integral Petroleum SA v. SCU-Finanz AG* [2015] EWCA Civ 144, 26 February 2015); Freeths LLP, *Contracting with an overseas company*, (July 22, 2015), https://www.freeths.co.uk/2015/07/22/contracting-with-an-an-overseas-company (same).

The Court disagreed and dismissed a case for lack of personal jurisdiction. *Id.* at 334–35, 343. The Court reasoned that, because the Swiss Commercial Register required two signatures to bind the Swiss corporate defendant, an agreement signed by only one alleged agent of the defendant was insufficient to confer specific jurisdiction:

> The evidence before the court, far from satisfying plaintiff's burden of establishing the propriety of personal jurisdiction over a foreign defendant, indicates that [the agent] was not authorized to bind [the company] . . . the Swiss Commercial Registry indicates that since December 11, 1990, [the company] has always and only granted signatory rights collectively by two and never single signatory right.

*Id.* at 340, 342 (quotation marks omitted). In this case, as in *Greene*, a Swiss attorney has submitted a declaration explaining the reasons why under Swiss law, the corporate defendant could not bound by an alleged agreement that was only executed by one agent. (Eich Dec.)

In the context of determining whether an entity was a foreign controlled entity for tax purposes, the United States Tax Court has similarly relied upon the disclosures in the Swiss Company Register: "Under provisions of Swiss law the authority of anyone, including a member of a Swiss company's board of administrators, to represent the company and to exercise executive powers is founded on 'signature power' as evidenced by registry in the Swiss commercial register." *CCA, Inc. v Comm'r of Internal Revenue*, 64 TC 137, 145 (TC 1975). In *CAA, Inc.*, all members of the company's board had "joint signature power"; "[t]hat is, any two of the members of AG'S board of administrators acting jointly had the executive power to represent AG vis-a-vis the outside world." *Id.* at 145–46. The Defendant here, likewise, requires two signatures to bind the company.

## II.    GIVEN DEFENDANT'S DEFENSES, ITS REFUSAL TO RESPOND WAS NOT WILLFUL

Defendant has a reasonable explanation for not responding to the complaint. Namely, that it was not properly served and that the Court lacks personal jurisdiction. Courts routinely find that, under such circumstances, a willful default has not occurred. For example, in *Westvaco Corp. v. Viva Magnetics Ltd.*, the defendant had "proffered a reasonable explanation for its delay in defending the action, specifically, that it believed that service had not been properly effected and that it was not, therefore, required to respond to the Complaint." 00Civ.9399(LTS)(KNF), 2002 WL 1683454, at *2 (S.D.N.Y. July 24, 2002). The Court concluded that the "failure to file a timely response to the Complaint was not 'willful,' so as to warrant the unusual remedy of a grant of default judgment against it." *Id.*; *see also Myrieckes v. Woods*, No. 08 Civ. 4297(GBD)(THK), 2010 WL 4903621, at *1 (S.D.N.Y. Dec. 1, 2010) (finding a lack of willfulness where defendant incorrectly believed that service was improper).

Furthermore, Defendant's conduct should not be characterized as a willful default since it promptly informed Plaintiff of the basis for its refusal to respond to the complaint. (Sept. 21, 2020 Crossman Letter, Attached to the complaint). Defendant's timely response to the instant motion and its willingness to specially appear promptly to contest service and jurisdiction further supports the conclusion that it has not willfully defaulted. *See Prestige Capital Corp. v. Fuber LLC*, 16 Civ. 9577 (DAB), 2017 WL 2558803, at *2 (S.D.N.Y. June 5, 2017) ("the relevant inquiry for determining willfulness is the defaulting party's actions after it became aware of the existence of the litigation or entry of default").

**III.    THERE IS NO PREJUDICE TO PLAINTIFF**

The Second Circuit has held that delay, even if significant, is not itself sufficient to establish prejudice. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d. Cir. 1993). "Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (internal quotations and citation omitted). Applying this rule, Courts often find a lack of prejudice where the case is in an early procedural posture. *Gaston v. Rothenberg*, 1:19-cv-00164 (ALC), 2019 WL 5781943, at *2 (S.D.N.Y. Nov. 5, 2019) (finding no prejudice where the default resulted in a delay of just a few months following the commencement of the case). Here, Plaintiff has not offered any evidence to suggest prejudice. Nor could it considering the early posture of this litigation, which was recently commenced in July 2020.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the accompanying declarations, Plaintiff's order to show cause seeking entry of default should be denied, and the Court should dismiss the case due to improper service upon, and lack of personal jurisdiction over, the Defendant.

Dated: New York, New York
November 6, 2020

ZUKERMAN GORE BRANDEIS
& CROSSMAN, LLP

By: _____
John K. Crossman
Jesenia Ruiz de la Torre
Eleven Times Square
New York, New York 10036
Telephone: (212) 223-6700
Facsimile: (212) 223-6433

*Attorneys for Defendant The Native, S.A.
Making a Special Appearance to Contest
Service and Jurisdiction*

8