UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LISA COOLEY, LLC

        Plaintiff,

V.

THE NATIVE, S.A.,

        Defendant.

No. 20-cv 5800 (VEC)

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

**Oral Argument Requested**

ZUKERMAN GORE BRANDEIS
  & CROSSMAN, LLP
John K. Crossman
Jesenia Ruiz de la Torre
Eleven Times Square
New York, New York 10036
Telephone: (212)-223-6700
Facsimile: (212) 223-6433

*Attorneys for Defendant The Native, S.A.*
*Making a Special Appearance to Contest*
*Service of Process and Jurisdiction*

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS .......................................................................................................2

ARGUMENT ............................................................................................................................ 4

    I.  The Complaint Should be Dismissed Due to Lack of Personal Jurisdiction and Improper Service ................................................................................. 4

    II.  The Guarantee Was Not Authorized............................................................................ 4

    III.  Swiss Law Applies on This Motion.............................................................................7

    IV.  Alternatively, Dismissal Is Appropriate Under New York Law ......................................... 9

CONCLUSION .....................................................................................................................10

## Table of Authorities

**Cases**

*Abu Dhabi Inv. Auth. v. Citigroup, Inc.*,
  No. 12 CIV. 283 (GBD), 2013 WL 789642 (S.D.N.Y. Mar. 4, 2013),
  *aff'd*, 557 Fed.Appx. 66 (2d Cir. 2014) ............................................................... 7

*Auten v. Auten*,
  308 N.Y. 155 (1954) ................................................................................................ 7

*CCA, Inc. v. Comm'r of Internal Revenue*,
  64 TC 137 (TC 1975) .............................................................................................. 6

*Dynegy Midstream Servs. v. Trammochem*,
  451 F.3d 89 (2d Cir. 2006) ...................................................................................... 4

*Fin. One Pub. Co. v. Lehman Bros. Special Fin.*,
  414 F.3d 325 (2d Cir. 2005) .................................................................................... 7

*Frishberg v. Esprit de Corp., Inc.*,
  778 F. Supp. 793 (S.D.N.Y. 1991) .......................................................................... 7

*Greene v. New Dana Perfumes Corp.*,
  287 B.R. 328 (D. Del. 2002) ............................................................................... 6, 9

*Hutner v. Greene*,
  734 F.2d 896 (2d Cir. 1984) .................................................................................... 7

*In re Magnetic Audiotape Antitrust Litigation*,
  334 F.3d 204 (2d Cir. 2003) .................................................................................... 4

*Jonas v. Estate of Leven*,
  116 F. Supp. 3d 314 (S.D.N.Y. 2015) ..................................................................... 2

*Khan v. Khan*,
  360 Fed.Appx. 202 (2d Cir. 2010) .......................................................................... 4

*New York. Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941) ................................................................................................ 7

*Schwartz v. Liberty Mut. Ins. Co.*,
  539 F.3d 135 (2d. Cir. 2008) ................................................................................... 8

*Schwartz v. Twin City Fire Ins. Co.*,
   492 F.Supp.2d 308 (S.D.N.Y. 2007) .................................................................................. 8

*Strip Clean Floor Refinishing v. New York Dist. Council No. 9 Broth. of Painters*,
   333 F.Supp 385 (E.D.N.Y. 1971) ....................................................................................... 9

**Statutes**

Fed. R. Civ. P. 12(b)(2) ................................................................................................... 1, 4

Fed. R. Civ. P. 12(b)(5) ....................................................................................................... 1

**Other Authorities**

Allen & Overy, Applicable law for whether a contract has been validly
   executed by a foreign company (April 20, 2015) ............................................................. 5

Freeths LLP, Contracting with an overseas company (July 22, 2015) ................................. 5

*Integral Petroleum SA v. SCU-Finanz AG*
   (United Kingdom, February 26, 2015) .............................................................................. 5

The defendant, The Native, S.A. ("Defendant"), through its counsel Zukerman Gore Brandeis & Crossman, LLP, appearing specially for the limited purpose of challenging personal jurisdiction and service of process, submits this memorandum of law in support of its motion to dismiss the Complaint filed by plaintiff, Lisa Cooley, LLC ("Plaintiff") for lack of personal jurisdiction and insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(2) and (5).

## PRELIMINARY STATEMENT

Defendant is a Swiss company not subject to jurisdiction in New York. Plaintiff has not even attempted to serve Defendant in accordance with any recognized method of service. Instead, Plaintiff improperly relies entirely upon a purported guarantee (the "Unauthorized Guarantee"), a document in which Defendant supposedly submitted to jurisdiction and agreed to alternate means of service of process even though the document lacks the required signatures.

The Unauthorized Guarantee cannot subject the Defendant to jurisdiction, and cannot authorize alternate means of service, because the Unauthorized Guarantee was not signed by authorized representatives of the Defendant. Under Swiss law, to bind the Defendant corporation, a purported agreement must be signed by *two* duly authorized representatives. This requirement is publicly stated in the applicable Swiss Commercial Register of companies. The Unauthorized Guarantee only bears one signature of any representative of Defendant. Moreover, it appears that even that single signature was applied to the Unauthorized Guarantee without the knowledge or approval of Defendant's board of directors.

Because the Unauthorized Guarantee lacks the required two authorized signatures, it is a legal nullity. This conclusion applies no matter what law is applied to this case. Under the laws of Switzerland, two signatures are required. And, as the place of organization of the defendant, Switzerland has the greatest interest in setting the legal standards for how to create a valid obligation of a Swiss company. The same conclusion can also be reached applying New York law, which precludes plaintiff's reliance upon "apparent authority" where – as here – the principal publicly discloses limitations on a purported agent's authority. Consequently, under any law, the Unauthorized Guarantee cannot establish defendant's submission to jurisdiction. Likewise,

1

Plaintiff cannot employ a method of service of process unauthorized by law and only based upon an agreement which, for the reasons already stated, has no legal effect. Accordingly, the Complaint should be dismissed.

## STATEMENT OF FACTS

The Defendant is a Swiss company that maintains its principal place of business in Switzerland. (Complaint ¶ 3, which is annexed as Exhibit A to the Christian Eich Declaration ("Eich Dec.")). Under Swiss law, every corporation must be registered in the Swiss Commercial Register. (Eich Dec. ¶ 6). Defendant submits the Eich Declaration, a declaration by a Swiss attorney which describes the applicable Swiss law. The Eich Declaration also annexes proof of the Defendant's public disclosure that *two* signatures are required to bind the company. This Court should consider the Eich Declaration because, when evaluating a motion to dismiss for lack of personal jurisdiction, courts "may consider materials outside the pleadings, including affidavits and other written materials." *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015).

The Swiss government maintains the Swiss Commercial Register to give the public important information regarding Swiss companies, including the names of those individuals who are authorized to act as representatives for the companies, and any restrictions on such individuals' authority, such as the need to act through *two* authorized signatures. (Eich Dec. at ¶ 9). Swiss companies may only be bound by persons registered with the government as agents, and that registration information is readily available to third parties in the online Swiss Commercial Register. (*Id.* at ¶¶ 9-15). One of the main functions of the Commercial Register is to give public access to information regarding commercial entities to protect third parties, and arm third parties with the tools they need to properly engage in authorized transactions with Swiss entities. (*Id.* at ¶¶ 8-9). Third parties that enter into transactions with Swiss entities without consulting the publicly available information maintained in the Commercial Register do so at their own peril. (*Id.* at ¶ 12).

2

Plaintiff alleges no excuse or explanation for why it chose to do business with a Swiss corporation apparently without bothering to acquaint itself with these basic elements of the law governing that corporation.

The Defendant registered with the Swiss Commercial Register in 2009. (Eich Dec. at ¶ 6). In 2018, when the purported guarantee was signed by *one* unauthorized person, the Defendant's record on the Commercial Register clearly required that any agreement purporting to bind the company must bear *two* authorized signatures. (*Id.* at ¶ 15, Exh. B).

Notwithstanding the publicly disclosed requirement that *two* signatures are required to bind the Defendant, the Plaintiff claims that it entered into a Guaranty, dated as of March 18, 2018, with the Defendant even though that alleged agreement was only signed by a *single* individual. (The Guaranty is attached the Complaint, which is annexed as Exhibit A to the Eich Dec.) And, the single individual who applied his signature to the alleged guarantee did not have actual authority from the Defendant's board of directors to do so. (Serge Umansky Declaration ("Umansky Dec.") ¶¶ 5-8). Mr. Umansky was the Vice-Chairman of Defendant's board at the time.

The Complaint alleges that the Defendant should be responsible for $679,646.98, exclusive of interests and costs, which sum is allegedly due and subject to the alleged guarantee. (Complaint ¶ 15).

According to the Complaint, the sole basis for personal jurisdiction over the Defendant is that the Defendant allegedly agreed *to submit* itself to the jurisdiction of this Court pursuant to the Unauthorized Guarantee. (Complaint ¶ 4). The Complaint does not allege that Defendant does business, or even that it transacts business, in New York. The Complaint does not allege that Plaintiff attempted to serve the Defendant with process under the Federal Rules of Civil Procedure or New York's CPLR. Instead, the sole allegation made in an attempt to show service of process is that the Defendant supposedly agreed to accept process pursuant to the Unauthorized Guarantee. That document, if it were enforceable, is alleged to permit service by mailing a document to the law firm of Zukerman Gore Brandeis & Crossman, LLP. (*Id.*)

3

However, because the document that purports to permit this non-standard form of service is itself legally non-binding, the plaintiff cannot rely upon such service here.

## ARGUMENT

### I. THE COMPLAINT SHOULD BE DISMISSED DUE TO LACK OF PERSONAL JURISDICTION AND IMPROPER SERVICE

It is axiomatic that a Court must dismiss any action brought against a defendant over whom the Court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). To defeat a motion to dismiss brought on grounds of a lack of personal jurisdiction, the plaintiff "bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204, 206 (2d Cir. 2003). Similarly, before a Federal Court may exercise personal jurisdiction over a defendant, the procedural requirement of service of the summons and complaint must be satisfied. *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) (citation and quotation omitted). On a motion to dismiss pursuant to Rule 12(b)(5) for deficient service of process, the plaintiff bears the burden of establishing that service was sufficient. *Khan v. Khan*, 360 Fed.Appx. 202, 203 (2d Cir. 2010) (citation omitted).

### II. THE GUARANTEE WAS NOT AUTHORIZED

In 2018, when the purported guarantee was signed, the Swiss Commercial Register clearly required that any agreement purporting to bind the defendant must bear *two* authorized signatures. (Eich Dec. at ¶ 15, Exh. B). The purported guarantee only bears *one* signature. Consequently, it cannot bind the Defendant. In choosing to deal with a Swiss company, Plaintiff's attorneys had the responsibility to look to the Swiss Commercial Register to determine what signatures were required to bind the Company. Plaintiff's attorneys either failed to do this or ignored the results. Either way, Plaintiff's failure to obtain an enforceable guarantee is a problem of Plaintiff's own making. The information demonstrating that two signatures are required was readily available to the Plaintiff.

4

It is common for Swiss entities to require *two* signatures to bind a company. Even the most cursory investigation would find many articles available online discussing the dual signature requirement. Indeed, many such articles reference a well-known English decision discussing the requirement, and finding that a contract was not enforceable against a Swiss company because, among other things, the purported contract had not been executed by two representatives of the company as required based on the company's disclosures in the Swiss Commercial Register. *Integral Petroleum SA v. SCU-Finanz AG* (United Kingdom, February 26, 2015) (attached to the Jesenia Ruiz de la Torre Declaration as Exhibit 1); *see also, e.g.*, Allen & Overy, Applicable law for whether a contract has been validly executed by a foreign company (April 20, 2015), https://www.allenovery.com/en-gb/global/news-and-insights/publications/applicable-law-for-whether-a-contract-has-been-validly-executed-by-a-foreign-company; Freeths LLP, Contracting with an overseas company (July 22, 2015), https://www.freeths.co.uk/2015/07/22/contracting-with-an-an-overseas-company (attached to the Ruiz Dec. as Exhibit 2 and Exhibit 3, respectively).

The facts of this case illustrate the importance of the two-signature requirement. Here, the one representative of the Defendant that did sign the guarantee, Sergey Skatershchikov, did so without the knowledge or involvement of the company's board of directors. (Umansky Dec. ¶¶ 5-8). The declaration of Victor Lezuitov, a current member of Defendant's board of directors, also confirms that it was not until after this lawsuit had been filed that he learned of the existence of the Unauthorized Guarantee and, prior to the lawsuit, the alleged Guarantee was never presented to or discussed among the current board of directors. (Victor Lezuitov Declaration ("Lezuitov Dec.") ¶¶ 5-9). Had plaintiff taken the necessary steps to seek the required two signatures, the board of the defendant would have had an opportunity to evaluate the proposed guarantee, and to either authorize execution, or to refuse it, either way, with actual knowledge of the document. But instead, by ignoring the published requirements, Plaintiff has sought to obtain a guarantee by stealth, without going through the normal process to vet and approve, or not.

5

In *Greene v. New Dana Perfumes Corp.*, 287 B.R. 328 (D. Del. 2002), the United States District Court of the District of Delaware decided a case that is directly on point. The plaintiff in *Greene* had asserted a breach of contract claim for unpaid severance under an employment agreement. *Id.* at 330. Plaintiff attempted to argue that the Court had specific jurisdiction over the defendant because one of its alleged agents had signed the employment agreement at issue. *Id.* at 334-35. The Court in *Greene* found that the Swiss company could not be bound by the agreement and was not subject to jurisdiction because the signatory lacked the authority to bind the Swiss company. *Id.* at 334–35, 343. One of the key facts that justified this conclusion was that – *just like the situation here* – the Swiss Commercial Register required *two* signatures to bind the Swiss corporate defendant; consequently, and an agreement signed by only one alleged agent of the defendant was insufficient to confer specific jurisdiction:

> The evidence before the court, far from satisfying plaintiff's burden of establishing the propriety of personal jurisdiction over a foreign defendant, indicates that [the agent] was not authorized to bind [the company] . . . the Swiss Commercial Registry *indicates* that since December 11, 1990, [the company] has always and only granted signatory rights collectively by *two* and never single signatory right.

*Id.* at 340, 342 (quotation marks omitted; emphasis added). In this case, as in *Greene*, a Swiss attorney has submitted a declaration evidencing that the Swiss registry disclosure prohibits the plaintiff from enforcing an alleged agreement that was only executed by one agent. (Eich Dec.)

The United States Government itself relies upon the disclosures in the Swiss commercial Register. For example, in determining whether an entity qualifies as a foreign controlled entity for tax purposes, the United States Tax Court examines the disclosures in the Swiss Company Register: "Under provisions of Swiss law the authority of anyone, including a member of a Swiss company's board of administrators, to represent the company and to exercise executive powers is founded on 'signature power' as evidenced by registry in the Swiss commercial register." *CCA, Inc. v. Comm'r of Internal Revenue*, 64 TC 137, 145 (TC 1975). In *CCA, Inc.*, all members of the company's board had "joint signature power"; "[t]hat is, any two of the members of AG'S board of administrators acting jointly had the executive power to represent AG vis-a-vis the outside

6

world." *Id.* at 145–46. The Defendant here, likewise, requires two signatures to bind the company.

### III.  SWISS LAW APPLIES ON THIS MOTION

Swiss substantive law should be applied to analyze whether Mr. Skatershchikow had the authority to sign the alleged guarantee on the Defendant's behalf. Since this is a diversity case, the Court will apply the choice of law rules of the forum state. *New York. Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In determining which law applies, New York state courts apply a "'paramount interest' test, which applies the law of the jurisdiction having the greatest interest in the litigation." *Frishberg v. Esprit de Corp., Inc.*, 778 F. Supp. 793 (S.D.N.Y. 1991) (citation omitted). Applying this test, "courts, instead of regarding as conclusive the parties' intention or the place of making or performance, lay emphasis rather upon the law of the place 'which has the most significant contacts with *the matter in dispute*." *Auten v. Auten*, 308 N.Y. 155, 160 (1954) (emphasis added). The paramount interest test is "not rigid, but rather is determined by 'an evaluation of the facts or contacts which related to the purpose of the particular law in conflict.'" *Abu Dhabi Inv. Auth. v. Citigroup, Inc.*, No. 12 CIV. 283 (GBD), 2013 WL 789642, at *6 (S.D.N.Y. Mar. 4, 2013), *aff'd*, 557 Fed.Appx. 66 (2d Cir. 2014) (citation omitted). It is a "flexible approach" intended to give "'controlling effect to the law of the jurisdiction, which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation.'" *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 337 (2d Cir. 2005) (citation omitted).

To determine the jurisdiction having the greatest interest in the outcome of a specific issue, it is important for the Court to identify the precise issue that is in dispute. The doctrine of dépeçage is often applied by New York courts in their choice of law analysis. Under dépeçage, the rules of one legal system can apply to regulate certain issues arising from a given transaction or occurrence, while those of another jurisdiction apply to regulate other issues arising in the case. *Hutner v. Greene*, 734 F.2d 896, 900-01 (2d Cir. 1984) (applying California law to determine

7

whether an individual was required to obtained a broker's license, and New York law to other aspects of a contract dispute); *Schwartz v. Twin City Fire Ins. Co.*, 492 F.Supp.2d 308, 328 (S.D.N.Y. 2007), *aff'd sub nom., Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135 (2d. Cir. 2008) (applying New York law to determine the insurer's state of mind and California law to the interpretation of the contracts).

The specific issue in dispute on this motion is whether Mr. Skatershchikow had the authority to sign a contract purporting to bind a Swiss company. This analysis therefore concerns the moment *before* Skatershchikow applied his signature to the document. The question is: when Skatershchikow raised his pen, did he have authority, *acting alone*, to bind the company?

Switzerland has the greatest interest in the outcome of this issue for five reasons.

First, the Defendant is organized under the laws of Switzerland. Defendant is also headquartered in Switzerland. Basic legal principles as well as common sense demand that a Swiss company operating in Switzerland should be able to rely on Swiss law in determining whether and when it is bound by a contract.

Second, if performance under the Unauthorized Guarantee were required it would have occurred in Switzerland since payments would be made from Defendant's bank account in Switzerland. (Lezuitov Dec. ¶¶ 10-11).

Third, Switzerland has an interest in consistently regulating Swiss Companies through the Swiss Commercial Register. If some contracting parties and/or foreign courts could simply disregard the information in the Swiss Commercial Register (while other parties or courts did not), that would undermine the entire system established by the Swiss government. Indeed, it would create the exact opposite effect: Instead of certainty, such a result would inject uncertainty into transactions all over the world. What is more, the necessary requisites for contract formation with such a company would no longer be certain; they would, instead, vary depending upon where a counterparty happened to be based, or where it happened to file suit.

Fourth, at the time that Mr. Skatershchikow was allegedly "authorized" to sign this document, the Defendant had no transactional contacts with New York, since the guarantee itself

8

had not yet been signed. Thus, the specific issue of whether Mr. Skatershchikow could bind the Defendant relates to facts in existence *before* the Unenforceable Guarantee was signed. At that time, New York had no interest in the Defendant or its policies for authorizing signatures. Therefore, on the issue of whether the Guarantee was validly executed, the only applicable interests reside in Switzerland.

Finally, the Complaint lacks any allegation, and no evidence has been submitted, to support a claim that the Defendant intended to be bound by the laws of New York. The choice of law provision in the Unauthorized Guarantee cannot be characterized as evidence of an intent to be bound by New York law because Mr. Skatershchikow did not have authority from the Defendant to agree to such a provision. A river cannot rise higher than its source. Plaintiff is attempting to "pull itself up by its own bootstraps," seeking to use a "choice" of law clause as evidence of an intent to *choose* the very same choice of law clause. This is circular reasoning.

## IV. ALTERNATIVELY, DISMISSAL IS APPROPRIATE UNDER NEW YORK LAW

Alternatively, dismissal of the Complaint is appropriate under New York law. Under New York law, an agent must possess either actual or apparent authority to enter into a binding contract. The Complaint fails to allege that Mr. Skatershchikow had actual or apparent authority. Nor could it. As the declaration of Mr. Umansky confirms, the board of directors of the Defendant never actually authorized Mr. Skatershchikow to enter into the Unauthorized Guarantee. Furthermore, given the publicly disclosed limitations upon Mr. Skatershchikow's authority – namely, that he could not bind the Defendant with only his signature – there is no basis for finding the existence of apparent authority under New York law. *See Strip Clean Floor Refinishing v. New York Dist. Council No. 9 Broth. of Painters*, 333 F.Supp 385, 396-97 (E.D.N.Y. 1971) (applying New York law; suit could not be maintained under theory of apparent authority because limitations on authority were a matter of public record and thus corporations should have had notice of the absence of authority); *see also See Greene v. New Dana Perfumes Corp.*, 287 B.R. 328 (D. Del. 2002) (applying Delaware law; considering plaintiff's arguments regarding

9

apparent authority; concluding that the alleged agent lacked authority, in part, due to information maintained in the Swiss Commercial Register).

CONCLUSION

For the foregoing reasons and the reasons set forth in the accompanying declarations, Plaintiff's complaint should be dismissed due to improper service upon, and lack of personal jurisdiction over, the Defendant.

Dated: New York, New York
December 21, 2020

Respectfully submitted,

ZUKERMAN GORE BRANDEIS
  & CROSSMAN, LLP

By: _____
John K. Crossman
Jesenia Ruiz de la Torre
Eleven Times Square
New York, New York 10036
Telephone: (212) 223-6700
Facsimile: (212) 223-6433

*Attorneys for Defendant The Native, S.A.*
*Making a Special Appearance to Contest*
*Service of Process and Jurisdiction*

10