UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LISA COOLEY, LLC,<br><br>    *Plaintiff*,<br><br>v.<br><br>THE NATIVE, S.A.,<br><br>    *Defendant*. | No. 20-cv-5800 (VEC)<br><br>**DECLARATION OF LISA COOLEY** |

LISA COOLEY, under penalty of perjury, declares as follows:

1. I am the owner and single member of Lisa Cooley, LLC ("LCLLC"), which is the Plaintiff in this action. I make this declaration, which is based on my personal knowledge, in opposition to motion of The Native, S.A. to dismiss this action for lack of personal jurisdiction and service of process.

2. The principal asset of LCLLC is the prime lease at 107 Norfolk Street ("107 Norfolk"). It was always my intention to sublet 107 Norfolk and I had bargained with the landlord for that right.

3. In early 2018 I was contacted by a commercial real estate broker named Jordan Weiss of the Savills-Studley firm in New York. He told me that Paddle8, the New York-based online auction company was interested in subleasing 107 Norfolk and that Paddle8 had a Swiss parent company named The Native, which was interested in using 107 Norfolk jointly with Paddle8.

1

4. Separate from my ownership of LCLLC, I am a professional art advisor in New York. Therefore, while I had never worked directly with Paddle8, I was quite familiar with it. In fact. I had known Alexander Gilkes of Paddle8 for several years by then and felt comfortable working with him. However, he quickly told me that the person who was in charge of negotiating and eventually approving of the sublease was a woman named Izabela Depczyk from The Native. My understanding was that she was the founder of The Native, and I noted that her email signature stated that she was the "Founder and Executive Board Member" of The Native. I had not heard of The Native previously, but came to learn that they were somehow involved with Bitcoin technology and intended to use Paddle8 as their entrée to the art world. Gilkes and Weiss described The Native as Paddle8's new "parent company."

5. The email chain in February and March 2018 with the subject line "update" is annexed as Exhibit 1. Some of the emails included Depczyk, Weiss and Gilkes. Others only included only Depczyk. The early drafts of the Paddle8 Sublease by my attorneys at the time, Olshan Frome Wolosky LLP, had no early termination clause and required a security deposit equal to three months rent. Depczyk asked for a security deposit of only two months and an early termination clause. I agreed, on the condition that there would be a separate guaranty. In an email to Depczyk on February 12, 2018 at 2:38 p.m., I wrote the following

> Dear Iza:
>
> My attorneys want a guarantee, but they said a parent entity guarantee is just fine. I could have that written up and have a sublease to you guys most likely today or if not first thing tomorrow. They wrote the sublease already.
>
> I definitely discussed a guarantee with Jordan and I'm confident I have it in an email someplace. I told him that it should be written up on the term sheet as pending financials since we didn't understand the relationships between the companies.

6. Depczyk wrote back one minute later:

> Dear Lisa, ok, clear thanks. So we stay with the 2 month security deposit and the guarantee provided by parent company. Will provide you with the financials of parent company soonest.
>
> Izabela

7. Two minutes later, she sent financials for the first half of 2017, confirming what everybody already knew: that the "parent company" was The Native.

8. There was apparently some confusion over the type of "Guarantee" that The Native would provide. I believed that it would be a full guarantee. Depczyk believed it would be a more limited "good guy guarantee." I believed that was insufficient and in an email to Depczyk, Weiss and Gilkes on February 28, 2018 I wrote that:

> Jordan has told me that Iza's company has an agreement to buy more shares of P8, but what if something happens and that is interrupted, or doesn't occur? For a publicly traded company, it shouldn't be a problem to provide a full guarantee. Your two companies together have immense resources compared to what my single-member LLC has, which is actually just this space. God forbid if P8 declared bankruptcy, it would catastrophically affect me. I have no desire and would likely not have the resources to monetize it again, beyond the termination clause that we agreed to.

9. As it turned out, that worst-case scenario occurred. Paddle8 filed for bankruptcy in March 2020 and received court approval to reject the Sublease in June 2020.

10. The Native pushed back against the full guarantee. Depczyk wrote to me on March 1 that:

> I've talked to The Native's board of directors and they are pushing back on the full guarantee. This was never on the table, and it is a shame that we got this important point lost somewhere in the communication.
>
> Our final decision is to provide the good guy guarantee which is both standard market practice and it is fair for you, the landlord and us.

11. However, the board apparently relented. The Guaranty were executed on March 13, 2018 by Sergey Skaterschikov, The Native's Chairman, apparently because he was in New York at that time and Depczyk was not. It was a minor issue that did not concern me or my lawyers at that time. Both Depczyk and Skaterschikov were directly involved. For example, an email to me from Gilkes dated January 8, 2018 (Exhibit 2) (emphasis added) stated:

> Dear Lisa,
>
> We are still keen to move into the gallery. ***Iza and Sergey were keen to see it in person***. Given the time restrictions, may I suggest that they arrange a FaceTime visit this week? So that we do not lose the opportunity. We are ideally hoping to be in a new space by March 1st. ***Iza just wanted to be sure that it was a nice work space for the team***. Many thanks,
> A

12. From the first draft of the Guaranty with The Native as guarantor to the version that was executed, it provided that New York law would apply, that The Native was subject to personal jurisdiction in New York with respect to the Guaranty, and that The Native could be served through the law firm that was apparently representing The Native (as well as Paddle8) concerning 107 Norfolk: Zukerman Gore Brandeis & Crossman, LLP (the "Zukerman Firm"). I would never have agreed to a Guaranty requiring LCLLC to chase after The Native in Switzerland in a Swiss court under Swiss law. The whole point was to have ready access to the guarantor in the event that Paddle8 defaulted, which is exactly what happened.

13. It was my clear understanding that the Zukerman Firm represented The Native as well as Paddle8. Exhibit 3 is an email from Depczyk to me (on which Jeff Zukerman, Gilkes and Weiss were copied that stated:

> Lisa,
>
> As promised, here's an introduction to our attorney Mr. Zukerman.

> Mr. Zukerman will expect to receive the sublease from your legal counsel tomorrow morning.
>
> I remain on standby in case of any questions.
>
> Thank you,
> Izabela

14. The final significant step was to get the landlord to approve the Sublease. That turned out to be slow process. The landlord approval finally came in late April. There was then a flurry of activity (getting deposit checks, exchanging consents, etc.) reflected in the email chain attached as Exhibit 4. I actually went to the Zukerman Firm to facilitate the handover of checks, consents and keys. (Parenthetically, I was struck by how nice and helpful Jeff Zukerman was.) As before Depczyk was copied on every email in the chain. Once everything was accomplished, she wrote this email to everyone involved:

> Thank you all for working tirelessly to make this happen! We are so excited to move into our new space.
>
> Warmly,
> Iza & Paddle8 Team

15. Exhibit 5 is an email chain titled "Paddle 8 Sublease." One of the people copied on the chain was Christian Eich (eich@balex.law), who I understood to be The Native's Swiss lawyer. Neither Mr. Eich nor anyone else ever raised concerns about the Guaranty or the Sublease under Swiss law.

Dated: Brooklyn, New York
January 8, 2021

*[signature]*