UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LISA COOLEY, LLC<br><br>       Plaintiff,<br><br>  v.<br><br>THE NATIVE, S.A.<br><br>       Defendant. | No. 20-cv-5800 (VEC) |

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

                Zukerman Gore Brandeis
                  & Crossman, LLP
                John K. Crossman
                Jesenia Ruiz de la Torre
                Eleven Times Square
                New York, New York 10036
                Telephone: (212)-223-6700
                 Facsimile: (212) 223-6433

*Attorneys for Defendant The Native, S.A.
Making a Special Appearance to Contest
Service of Process and Jurisdiction*

Table of Contents

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .................................................................................................................................. 2

   I.  The Unauthorized Guarantee is Unenforceable ....................................................... 2

   II.  Plaintiff's Newly Asserted Personal Jurisdiction Argument Fails .....................7

   III. Plaintiff Tacitly Admits Improper Service, Which is a Jurisdictional
       Defect That Warrants Dismissal ................................................................................ 9

CONCLUSION ............................................................................................................................10

## Table of Authorities

**Cases**

*Adler v. Solar Power, Inc.*,
  No. 16 CV 1635-LTS-GWG,
  2018 U.S. Dist. LEXIS 54771 (S.D.N.Y. Mar. 30, 2018) ............... 5

*Andros Compania Maritima S.A. v. Intertanker Ltd.*,
  714 F.Supp. 669 (S.D.N.Y. 1989) ............... 8

*Arrow Trading Co. v. Sanyei Corp. (Hong Kong), Ltd.*,
  576 F.Supp. 67 (S.D.N.Y. 1983) ............... 8

*Brass v. Am. Film Tech., Inc.*,
  987 F.2d 142 (2d Cir. 1993) ............... 6

*Dynegy Midstream Services v. Trammochem*,
  451 F.3d 89 (2d Cir. 2006) ............... 9-10

*F.D.I.C. v. Providence Coll.*,
  115 F.3d 136 (2d Cir. 1997) ............... 5

*Fennell v. TLB Kent Co.*,
  865 F.2d 498 (2d Cir.1989) ............... 6

*Ford v. Unity Hosp.*,
  32 N.Y.2d 464 (1973) ............... 6, 9

*Gaines Serv. Leasing Corp. v. Carmel Plastic Corp.*,
  105 Misc. 2d 694 (Civ. Ct. 1980),
  *aff'd*, 113 Misc.2d 752 (App. Term. 1981) ............... 6

*Greene v. New Dana Perfumes Corp.*,
  287 B.R. 328 (D. Del. 2002) ............... 2

*Hallock v. State*,
  64 N.Y.2d 224 (1984) ............... 6

*Kirschner v. KPMG LLP*,
  15 N.Y.3d 446 (2010) ............... 7

*La Candelaria E. Harlem Community Ctr., Inc. v. First Am. Tit. Ins. Co. of New York*,
  146 A.D.3d 473 (1st Dep't 2017) ............... 4

*Minskoff v. American Express Travel Related Servs. Co.*,
   98 F.3d 703 (2d Cir. 1996) .................................................................................................. 6

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*,
   484 U.S. 97 (1987) ............................................................................................................... 9

*Strip Clean Floor Refinishing v. New York Dist. Council No. 9 Broth. of Painters*,
   333 F.Supp 385 (E.D.N.Y. 1971) ...................................................................................... 7

*William Penn Life Ins. Co. of New York v. Irving Tr. Co.*,
   145 A.D.2d 174 (1st Dep't 1989) ...................................................................................... 5

**Other Authorities**

CPLR § 301 ................................................................................................................................ 8

CPLR § 302 ............................................................................................................................. 8, 9

Defendant, The Native, S.A., appearing specially through its counsel for the limited purpose of challenging personal jurisdiction and service of process, submits this Reply Memorandum of Law in further support of its Motion to Dismiss Plaintiff's Complaint for lack of personal jurisdiction and insufficient service of process.

PRELIMINARY STATEMENT

It is undisputed that, under Swiss law, the alleged guarantee is a legal nullity. When the guarantee was signed, publicly available information on the Swiss Commercial Register clearly disclosed that any agreement purporting to bind Defendant had to bear *two* authorized signatures. The purported guarantee only bears *one* signature. Plaintiff agrees that, under Swiss law, the guarantee is not enforceable. (Pl. Mem. at 16) (responding to Defendant's argument by admitting "[t]hat may be true under Swiss law in a Swiss court").

Having been forced to make this admission, Plaintiff's opposition then gives Swiss law the back of the hand and fails to recognize the importance of the information maintained in the Swiss Commercial Register. Plaintiff also attempts to rewrite its Complaint by now arguing that Mr. Skatershchikow, the individual who improperly applied his signature to the guarantee, had apparent authority to bind Defendant. But the information Plaintiff relies upon merely reflects the usual ebb and flow of a negotiation and, in fact, reveals that Plaintiff's proposal for a full guarantee was *rejected*. This rejection, along with the novelty of this transaction from Plaintiff's perspective, clearly required Plaintiff to investigate the scope of whatever authority Mr. Skatershchikow actually had. Plaintiff's apparent authority argument also fails because in trying to prove indicia of authority, it has merely pointed to words and conduct of the *agent* – and not of the *principal* – even though only conduct of a principal can prove apparent authority.

Plaintiff also now alleges a new basis for personal jurisdiction that was nowhere mentioned in its Complaint. That new basis is premised on Defendant's alleged contacts with New York. But, as we explain below and in the accompanying reply declarations, Plaintiff is incorrect regarding the facts. Defendant did not use the office space at issue, and it does not have

1

sufficient contacts with New York to justify a finding of general or specific personal jurisdiction. Thus, both of Plaintiff's newly raised arguments are unavailing.

## ARGUMENT

### I. THE UNAUTHORIZED GUARANTEE IS UNENFORCEABLE

*Swiss Law Controls*

There are compelling reasons for applying Swiss law to the particular issue of authority. The dispute here is about whether Mr. Skatershchikow had the authority to sign a contract purporting to bind a Swiss company. Switzerland has the greatest interest in the outcome of this issue because Defendant is organized under the laws of Switzerland and headquartered there, if performance under the unauthorized guarantee were required it would have to occur in Switzerland, and Defendant did not agree to submit itself to the jurisdiction of this Court pursuant to the unauthorized guarantee.

Switzerland also has an interest in consistently regulating Swiss Companies through the Swiss Commercial Register. A Federal Court has given effect to the requirements contained in the Swiss Register. *Greene v. New Dana Perfumes Corp.*, 287 B.R. 328, 339-342 (D. Del. 2002) (Swiss company was not bound by an agreement and not subject to jurisdiction because *one* signatory lacked the authority to bind the Swiss company pursuant to the Swiss Commercial Register, which required *two* signatures). This Court should do the same.

Plaintiff elected to seek a guaranty from a Swiss company doing business in Switzerland with Swiss assets; Plaintiff should have expected that company to behave according to Swiss law, and certainly Defendant at all times expected its own acts to be governed by Swiss law. A failure to apply Swiss law to this issue would create wide-ranging international uncertainty about whether a corporation could reasonably expect to have its actions in its home country (indeed, any country, not just Switzerland) evaluated and enforced according to the laws of that country.

The arguments raised in Plaintiff's opposition do not warrant a different result. Plaintiff should not be permitted to rely upon an unauthorized act – the signing of the guarantee in New

York – in its attempt to compel the application of New York law. Furthermore, Plaintiff's *incorrect* assertion that Defendant used 107 Norfolk Street (the "Premises") as an office and had New York operations does not weigh in favor of the application of New York law. The reply declarations of Defendant's current and former board members explain that Defendant did not use the Premises and did not have any business in New York other than its investment in P8H, Inc., d/b/a Paddle8 ("Paddle8"). As a result of that investment, Defendant merely held a minority, non-controlling interest in Paddle8. Additionally, the fact that Paddle8 – which is not a defendant in this lawsuit - worked with a New York firm to execute a sublease for its office in New York should not result in the application of New York law to determine The Native's rights. Plaintiff's claims in this litigation are not against Paddle8. Plaintiff's claims are solely against The Native.

*The Guarantee Was Unauthorized*

The Complaint is devoid of any allegation that Mr. Skatershchikow had apparent authority to enter into the guarantee. Feeling unconstrained by the absence of such an allegation, Plaintiff now improperly argues at length that apparent authority existed. At its core, Plaintiff's circular argument is that, because Mr. Skatershchikow signed the guarantee, he must have been authorized to do so. This is an empty tautology – if it were correct, there would *never* be a dispute about apparent authority for any signatory anywhere. Moreover, in an effort to cite documentary evidence to support its claim of authority, Plaintiff cites information that, in fact, undermines its position.

Plaintiff acknowledges that at the time the lease was executed, Plaintiff *believed* that Defendant's board of directors had *rejected* its proposal for a full guarantee. Specifically, Plaintiff cites a March 1, 2018 email from Izabela Depczyk. (Cooley Decl. ¶ 10 and Ex. 1.). In that email, Ms. Depczyk claims that she discussed the guarantee at issue in this case with Defendant's board of directors. That email also contains Ms. Depczyk's representation that Defendant's board "*rejected*" Plaintiff's request for a full guarantee and that this was the board's "*final decision*."

3

(emphasis added). Even when viewed in the light most favorable to Plaintiff, this email is *contrary to Plaintiff's position in this litigation. It is a representation that the board rejected Plaintiff's proposal for a full guarantee*.

Plaintiff also argues that this email "prove[s] conclusively that The Native's Board of Directors knew about [the guarantee] prior to its execution." (Pl. Mem. at 13). Not so. At best, Ms. Depczyk's email contains her own personal, informal comments about what she claims to have discussed with the board. There is no evidence that when she sent her email, she was speaking for the entire board. To the contrary, her email omits any documentation from the board, such as a board resolution. Ms. Depczyk did not include such information because she did not actually discuss the guarantee with the entire board. The reply declaration of Serge Umansky, the Vice-Chairman of Defendant's board of directors at the time, explains that Ms. Depczyk's statements were incorrect, and he confirms that *he did not discuss the guarantee with Ms. Depczyk during any board meetings or otherwise*. (Umansky Reply Dec. ¶¶ 3-4).

In a footnote, Plaintiff suggests that if Plaintiff had actually used the premises (it had not), Defendant's use of the Premises would have constituted a ratification of the unauthorized guarantee. (Pl. Mem. at 13, n. 8). Mr. Umansky's declaration confirms that the board was not aware of the material facts related to the unauthorized guarantee, and therefore could not have ratified it. *La Candelaria E. Harlem Community Ctr., Inc. v. First Am. Tit. Ins. Co. of New York*, 146 A.D.3d 473, 473 (1st Dep't 2017) (implied ratification requires proof that "the principal retains the benefit of an unauthorized transaction with knowledge of the material facts").

Plaintiff skirts the entire issue by casually stating that the board "apparently, relented" in its objection and that "Depczyk later told Cooley that they had agreed to the full guarantee." (Pl. Mem. at 9). Plaintiff fails to cite any documentation, such as a board resolution or even an email, to suggest or prove what Plaintiff claims is so "apparent": that Defendant's board withdrew its objection to giving the guarantee. Having believed that the board rejected the guarantee, Plaintiff should have made further inquiries regarding Mr. Skatershchikow's authority and should have demanded confirmation from Defendant's board – not merely individuals purporting to act on its

4

behalf – that Mr. Skatershchikow had authority to enter into a full guarantee. Moreover, when a purported agent of Defendant appeared in New York and was apparently willing to sign a full guarantee, this should have immediately raised red flags warranting an investigation into Mr. Skatershchikow's authority.

Under such unusual and, frankly, suspicious circumstances, Plaintiff had a duty to inquire regarding the scope of Mr. Skatershchikow's authority. *F.D.I.C. v. Providence Coll.*, 115 F.3d 136, 140-141 (2d Cir. 1997) ("to recover on a theory of apparent authority, [the third party] must establish two facts: "(1) [the principal] was responsible for the appearance of authority in [the agent] . . . and (2) [the third party's] reliance on the appearance of authority in [the agent] was reasonable . . . the duty of inquiry into an agent's apparent authority 'amounts to an alternative way of asking whether the third party reasonably relied on the representations of the agent that he possessed authority to bind the principal."); *William Penn Life Ins. Co. of New York v. Irving Tr. Co.*, 145 A.D.2d 174, 175 (1st Dep't 1989) ("since the doctrine of apparent authority does not automatically bind the principal to every transaction entered into by his agent purportedly on his behalf, prudence, if nothing else, dictates that when an agent's authority to enter into a particular transaction is less than certain, an inquiry be made of the principal to confirm the actual scope of the agent's authority. In other words, a duty of inquiry, if such it be, is owed by the third person not to the principal but to himself").

Plaintiff also should have inquired further as to scope of Mr. Skatershchikow's authority because it was embarking upon an extraordinary and novel transaction. Plaintiff concedes that a duty to inquire as to the scope of a purported agent's authority arises where a "transaction is extraordinary or novel." (Pl. Mem. at 17) (*citing Adler v. Solar Power, Inc.*, No. 16 CV 1635-LTS-GWG, 2018 U.S. Dist. LEXIS 54771, *18-19 (S.D.N.Y. Mar. 30, 2018)). This transaction was both extraordinary and novel. Plaintiff was dealing with a Swiss company, apparently for the first time. In choosing to deal with a Swiss entity, *Plaintiff's attorneys* had the responsibility to look to publicly available information on the Swiss Commercial Register to determine what signatures were required to bind Defendant.

5

Plaintiff's argument that its *adversary's attorneys* should have advised Plaintiff regarding Swiss law must be rejected. To begin with, Plaintiff is incorrect when it claims that Defendant hired Zukerman Gore Brandeis & Crossman, LLP to represent its interests with respect to the sublease and the purported guarantee. At the time, Zukerman Gore represented Paddle8 – not The Native, S.A. (Iezuitov Reply Dec. ¶ 12). There is no basis for claiming that Paddle8 or it's counsel had a duty to disclose the two-signature requirement applicable to The Native.

In an effort to support this argument, Plaintiff cites fraud cases. But even those cases hold that a duty to disclose will not arise where information is "readily available" to both parties. (Pl. Mem. at 17) (*citing Brass v. Am. Film Tech., Inc.*, 987 F.2d 142 (2d Cir. 1993) and *Gaines Serv. Leasing Corp. v. Carmel Plastic Corp.*, 105 Misc. 2d 694 (Civ. Ct. 1980), *aff'd*, 113 Misc.2d 752 (App. Term. 1981). Here, information disclosing the two-signature requirement was publicly available in the Swiss Registry; moreover, the requirement was a typical one for a Swiss company.

Plaintiff's apparent authority argument also fails because it has merely pointed to words and conduct of the *agent* – and not the *principal*. It is well established that "the existence of 'apparent authority' depends upon a factual showing that the third party relied upon the misrepresentations of the agent because of some misleading conduct on the part of the *principal — not the agent*." *Ford v. Unity Hosp.*, 32 N.Y.2d 464, 472-73 (1973) (citations omitted) (emphasis added); *see also Fennell v. TLB Kent Co.*, 865 F.2d 498, 503 (2d Cir.1989) (apparent authority requires "'*words or conduct of the principal, communicated to a third party*, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction.'") (quoting *Hallock v. State,* 64 N.Y.2d 224, 231 (1984)). Plaintiff acknowledges that this is the law. (Pl. Mem. at 14) (apparent authority "arises from the 'written or spoken words or any other conduct of the *principal*. . .'") (emphasis added) (citing *Minskoff v. American Express Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996)). Plaintiff's opposition does not point to any words or conduct of the *principal*. Instead, Plaintiff merely relies on emails and alleged conversations with two individuals purporting to act as *agents* of Defendant. The words or

6

conduct of purported agents, such as Mr. Skatershchikow and Ms. Depczyk, cannot be used to bootstrap themselves into having apparent authority.

Similarly, before a Defendant can be estopped from denying apparent authority, a Plaintiff must point to some act of *the principal* and not merely acts by the alleged *agents*. *Minskoff*, 98 F.3d at 708 (finding apparent authority did not exist and estoppel did not apply, and explaining that the conduct of "the principal" is determinative). Both Mr. Skatershchikow and Ms. Depczyk are the alleged *agents* here and, as a result, their words or conduct cannot be used to establish apparent authority.

Given the publicly disclosed limitations upon Mr. Skatershchikow's authority – namely, that he could not bind Defendant with a single signature – there is no basis for finding the existence of apparent authority. *Strip Clean Floor Refinishing v. New York Dist. Council No. 9 Broth. of Painters*, which was cited in Defendant's opening memorandum and not addressed in Plaintiff's opposition papers, supports this conclusion. 333 F.Supp 385, 396-97 (E.D.N.Y. 1971) (applying New York law; limitations on authority were a matter of public record and thus corporations should have had notice of the absence of authority).

Finally, because neither actual nor apparent authority can be established, the agency law concept that sometimes imputes the knowledge of the agent to the principal has no application here. As Plaintiff acknowledges, this concept only applies after a showing of actual or apparent authority has been made. (Pl. Mem. at 15) (quoting *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465 (2010) for the proposition that the "acts of agents, and the knowledge they acquire *while acting within the scope of their authority*" are imputed) (emphasis added).

## II. PLAINTIFF'S NEWLY ASSERTED PERSONAL JURISDICTION ARGUMENT FAILS

Plaintiff's Complaint only alleged one basis for personal jurisdiction, that Defendant had allegedly submitted itself to the jurisdiction of this Court based on a provision in the unauthorized guarantee. Plaintiff's opposition retreats from this sole basis for personal

jurisdiction. Instead, in an improper change of course, Plaintiff now asserts new basis for personal jurisdiction – Defendant's alleged contacts with New York.

There is no basis for general jurisdiction here. It is well-established that the *only* relevant date for this Court's general jurisdictional inquiry pursuant to CPLR 301 is the date on which the summons and complaint were served. As a result, the relevant date here is August 6, 2020. All of the articles and press releases cited by Plaintiff in support of its argument date back several years to 2018. Information from 2018 is irrelevant for the purposes of conducting a jurisdictional inquiry in August 2020. *See Andros Compania Maritima S.A. v. Intertanker Ltd.*, 714 F.Supp. 669, 675 (S.D.N.Y. 1989) ("the relevant time frame for the jurisdictional inquiry under [CPLR] § 301 is at the time of service of the summons and complaint"); *Arrow Trading Co. v. Sanyei Corp. (Hong Kong), Ltd.*, 576 F.Supp. 67, 70 (S.D.N.Y. 1983) ("the court concludes that defendant was not 'doing business' in New York at the time this action was commenced and is not, therefore, subject to jurisdiction pursuant to [CPLR] § 301"). And, as we next discuss, although Defendant listed the Premises as one of its office locations on its website, in fact Defendant never actually used the Premises.

Plaintiff also cannot prove the existence of specific jurisdiction under CPLR 302(a)(4), which applies when a claim arises out of a defendant's ownership, use, or possession of real property within the state. Reply declarations from current and former board members confirm that Defendant did not own, use, or possess the Premises. (Umansky Reply Dec. ¶¶ 6-8; Iezuitov Reply Dec. ¶¶ 3, 5-6). Defendant has also never maintained or used any office space in New York, or had any employees working out of New York. (Iezuitov Reply Dec. ¶¶ 5-9). None of the information cited by Plaintiff, including the mention of the Premises on Defendant's website, proves Defendant's use of the Premise. Defendant only listed the Premises as an address because it had aspirations of growing its presence in New York and using that space in the future. (*Id.* at ¶ 10). Those aspirations never became a reality. (*Id.*) Instead of growing, Defendant had to significantly curtail its operations. (*Id.* at ¶ 11). In fact, in 2020, Defendant became involved in bankruptcy proceedings in Switzerland, and its assets are still under the administration of a Swiss

bankruptcy trustee. (*Id.*) It is not enough for Plaintiff to rely on an aspirational statement on a website to establish personal jurisdiction.

Furthermore, assuming for the moment that Defendant used the Premises (which it did not), such use could not result in a finding of jurisdiction here. This cause of action does not "arise from" *Defendant's* alleged use of the Premises (nor could it, since no such use occurred). The real dispute here concerns *Paddle8's* use of the Premises and its default under the sublease. As a result, the claim asserted against Defendant does not arise from alleged use of the Premises by The Native.

Plaintiff also fails to prove the existence of specific jurisdiction under CPLR 302(a)(1), which applies when claim has a substantial relationship to business transacted by a defendant within the state. Defendant has never conducted any business in New York, and its mere ownership of a minority investment in Paddle8 does not constitute the conducting of business in New York. (Iezuitov Reply Dec. ¶¶ 4, 8). This was Defendant's first and only investment in an entity that conducted business in the United States. (*Id.* at ¶ 4). This investment cannot be used as a basis for specific jurisdiction here because the claims against Defendant did not arise from its investment in Paddle8. Furthermore, Plaintiff's circular argument that the execution of an unauthorized guarantee in New York should be characterized as business transacted by the Defendant in New York is wrong. *Ford v. Unity Hosp.*, 32 N.Y.2d 464, 464 (1973) ("the issuance of the cover letter by the limited agent cannot be held to constitute sufficient contacts with New York, since the limited agent was not authorized to issue it").

### III. PLAINTIFF TACITLY ADMITS IMPROPER SERVICE, WHICH IS A JURISDICTIONAL DEFECT THAT WARRANTS DISMISSAL

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 111 (1987) (rejecting the suggestion that the Court should create a common-law rule authorizing service of process, since "we would consider that action unwise, even were it within our power"); *Dynegy Midstream Services v. Trammochem*, 451 F.3d 89,

94 (2d Cir. 2006) (holding that the Federal Arbitration Act does not authorize nationwide service of process and "therefore the district court lacked personal jurisdiction"). Here, Plaintiff fails to satisfy its burden of proving that service was proper. The contractual service of process provision in the purported guarantee is a nullity. Plaintiff also fails to argue, let alone prove, that it properly served Defendant pursuant to the Federal Rules of Civil Procedure or New York's CPLR. Indeed, Plaintiff tacitly admits that it did not properly serve Defendant when, in a footnote, it asks this Court to "deem informal service sufficient." (Pl. Mem. 20 n. 10). No court in our experience has ever "deemed informal service sufficient" and this Court should not do so now.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the accompanying papers in support of this motion, Plaintiff's Complaint should be dismissed due to improper service upon, and lack of personal jurisdiction over, Defendant.

Dated: New York, New York
      February 8, 2021

Respectfully submitted,

ZUKERMAN GORE BRANDEIS
  & CROSSMAN, LLP

By: _____
    John K. Crossman
    Jesenia Ruiz de la Torre
    Eleven Times Square
    New York, New York 10036
    Telephone: (212) 223-6700
    *Attorneys for Defendant The Native, S.A.*
    *Making a Special Appearance to Contest*
    *Service of Process and Jurisdiction*