```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/5/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
LISA COOLEY, LLC,                                               :
                                                                :
                              Plaintiff,                        :
                                                                :
              -against-                                         :   20-CV-5800 (VEC)
                                                                :
THE NATIVE, S.A.,                                               :   OPINION AND ORDER
                                                                :
                              Defendant.                        :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Plaintiff Lisa Cooley, LLC brings this suit to enforce a Guaranty executed by Defendant, The Native, S.A. ("The Native"). Compl., Dkt. 1. The Guaranty was signed as part of a Sublease between Plaintiff and P8H, Inc., d/b/a Paddle 8 ("Paddle 8"). *Id*. ¶¶ 8-9. Pursuant to the Guaranty, Defendant, Paddle 8's corporate parent, "absolutely and unconditionally" guaranteed the payment of rent under the Sublease. Compl., Ex. 1 at 1. In March 2020, Paddle 8 filed for bankruptcy and defaulted on its rent payments, thereby triggering Defendant's obligations under the Guaranty. Compl. ¶¶ 10, 14. Plaintiff alleges that Defendant is responsible for Paddle 8's unpaid financial obligations under the Sublease, totaling $679,646.98. *Id*. ¶ 15. Defendant moves to dismiss the Complaint for lack of personal jurisdiction and insufficient service of process pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5). Dkt. 26. For the following reasons, Defendant's motion is DENIED.

## BACKGROUND

On March 13, 2018, Plaintiff Lisa Cooley, LLC ("LCLLC") sublet the premises located at 107 Norfolk Street in New York City to Paddle 8, an online art auction house. Compl. ¶ 7. As part of the sublease negotiations, The Native, Paddle 8's corporate parent which is headquartered

in Switzerland, executed a Guaranty. *Id.* ¶¶ 3, 8; Compl., Ex. 1. The Guaranty provides that The Native "absolutely and unconditionally guarantees the payment and performance when due by P8H, Inc. (d/b/a/ Paddle 8), a Delaware corporation ('Subtenant') of obligation for payment of fixed rent, additional rent and any sum due under the Sublease." *Id.* ¶ 9; Compl., Ex. 1 at 1. The Guaranty includes a choice of law provision stating that it "shall be construed in accordance with the laws of the State of New York," and it includes a waiver of "any defense … granted by the laws of any other country or jurisdiction unless such defense is also allowed by the laws of [] New York." *Id.* at 4. The Guaranty also provides, *inter alia*, that Defendant "irrevocably consents and submits to the jurisdiction of any Federal or State court sitting in the State of New York" with respect to any action "arising out of or in any way relating to [the] Guaranty." *Id.* Finally, the Guaranty provides that Defendant "irrevocably waives personal service of any summons and complaint and consents to [] service" on its attorneys Zukerman Gore Brandeis & Grossman, LLP. *Id.* at 5. The Guaranty was signed on March 13, 2018, by Sergey Skaterschikov, Defendant's Chairman, and Mr. Skaterschikov's signature was notarized by Mr. Zukerman, Defendant's attorney. *Id.*

Two years later, on March 16, 2020, Paddle 8 filed for bankruptcy in the United States Bankruptcy Court for the Southern District of New York, Compl. ¶ 10, and defaulted on its rent payments to Plaintiff, *id.* ¶ 14. The default triggered Defendant's obligations under the Guaranty. *Id.* ¶ 14. Plaintiff alleges that, pursuant to the Guaranty, Defendant is liable to LCLLC for Paddle 8's unpaid financial obligations, totaling $679,646.98.[1] *Id.* ¶¶ 14-15.

Defendant moves to dismiss the Complaint for lack of personal jurisdiction and improper service of process pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5).

---

[1] Pursuant to the terms of the Sublease, Paddle 8's default accelerated all of its financial obligations under the Sublease through September 29, 2022. Compl. ¶ 14.

**DISCUSSION**

A federal court sitting in diversity must apply the law of the forum state to determine whether it has personal jurisdiction over a defendant. *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir. 1996). To defeat a motion to dismiss for lack of personal jurisdiction, a plaintiff "need only allege facts constituting a *prima facie* showing of personal jurisdiction." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). In deciding a motion to dismiss for lack of personal jurisdiction, the Court "may consider materials outside the pleadings, including affidavits and other written materials," but must construe all pleadings and affidavits in favor of the plaintiff. *Id.*; *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015).

Before the Court reaches the merits of Defendant's motion to dismiss for lack of personal jurisdiction and improper service of process, it must resolve the parties' dispute regarding what law governs the validity and enforceability of the Guaranty. Plaintiff argues that New York law governs the validity and enforceability of the Guaranty; Defendant argues that Swiss law governs. *See* Def. Mem. of Law, Dkt. 26 at 7-9; Pl. Opp., Dkt. 27 at 13-18.

**I.    New York Law Governs Disputes Regarding the Validity of the Guaranty**

A federal court exercising diversity jurisdiction must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941). "New York choice of law principles require a court to apply the law of the state with the most significant relationship with the particular issue in conflict." *Indosuez Int'l Fin. B.V. v. Nat'l Reserve Bank,* 98 N.Y.2d 238, 245 (2002). In a breach of contract case, when determining which state has the most "significant relationship," courts consider factors including any choice of law provision in the relevant contract. *Merrill Lynch Cap. Servs., Inc. v. UISA Fin.,* No. 09-CV-2324, 2012 WL 1202034, at *5 (S.D.N.Y. Apr. 10, 2012), *aff'd,* 531 F. App'x 141 (2d Cir.

3

2013); *Int'l Minerals & Res., S.A. v. Pappas*, 96 F.3d 586, 592 (2d Cir. 1996) ("As has been noted, New York law is unambiguous in the area of express choice of law provisions in a contract … [A]bsent fraud or violation of public policy, contractual selection of governing law is generally determinative so long as the State selected has sufficient contacts with the transaction.") (internal citations omitted); *Bank Leumi Tr. Co. of New York v. Wulkan*, 735 F. Supp. 72, 76 (S.D.N.Y. 1990) ("A choice of law provision agreed to by the parties in a commercial transaction is binding and *prima facie* valid, as long as the jurisdiction selected bears a 'substantial relationship' to the agreement.") (quoting *Woodling v. Garrett Corp.,* 813 F.2d 543 (2d Cir. 1987)).

A choice of law provision in a contract governs disputes about the "existence or validity of that contract." *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 50 (2d Cir. 2004); *Int'l Minerals & Res., S.A.*, 96 F.3d at 592 (applying an English choice-of-law clause to the issue of contract formation); *Merrill Lynch Cap. Servs., Inc.,* 2012 WL 1202034, at *6 (applying New York law to determine enforceability of a guaranty because "the parties affirmatively chose New York law" in the guaranty); *IRB–Brazil Resseguros, S.A. v. Inepar Invs., S.A.,* 922 N.Y.S.2d 308, 310–11 (1st Dep't 2011) (applying New York law to determine whether a guaranty, allegedly executed by a person lacking actual authority under foreign law, was enforceable by a third party because "the parties affirmatively cho[]se New York law" in the guaranty).

Here, Defendant argues that the Court should apply Swiss law to assess the validity and enforceability of the Guaranty because Defendant is organized under the laws of Switzerland. Def. Mem. of Law, Dkt. 26 at 1, 7-9.  The Court disagrees.  The Guaranty contains a choice of law clause that expressly provides that the Guaranty will be "construed in accordance" with New York law and that New York law will govern any action arising from the Guaranty.  Compl., Ex. 1.  Moreover, New York "bears a substantial relationship to the Agreement" because the

4

Guaranty pertains to the sublease of real property located in New York City. *Bank Leumi Tr. Co. of New York*, 735 F. Supp. at 76. Accordingly, the Court sees no reason to deviate from the parties' agreed-upon choice of law and will apply New York law to any disputes regarding the formation or validity of the Guaranty.[2] *Motorola Credit Corp.,* 388 F.3d at 50; *IRB–Brazil Resseguros, S.A.* 922 N.Y.S.2d at 311 (enforcing New York choice of law clause because it "protect[s] the justifiable expectation of the parties who choose New York law as the governing law in international financial transactions") (internal citation omitted); *Bitumenes Orinoco, S.A. v. New Brunswick Power Holding Corp.*, No. 05-CV-9485, 2007 WL 485617, at *8, 11 (S.D.N.Y. Feb. 13, 2007) (applying New York law to resolve dispute regarding the formation of a contract between a Canadian company and a Venezuelan company because the contract included a New York choice-of-law provision). As such, Defendant's argument that the Guaranty is invalid under Swiss law because it lacks two signatures by "duly authorized representatives" is irrelevant. *Bank Leumi Tr. Co.*, 735 F. Supp. at 76 (rejecting Defendant's argument that the Guaranty was illegal under Israeli law because "even assuming the statute rendered [Defendant's] guaranty unenforceable under Israeli law, the validity, enforceability and legality of the Guaranty, by its own terms, are governed by New York law [and under New York law,] the Guaranty is fully valid and enforceable.").

---

[2] Defendant's arguments that "Plaintiff should have expected [defendant] to behave according to Swiss law," that "Defendant at all times expected its own acts to be governed by Swiss law," and that there is "no evidence" that "Defendant intended to be bound by the laws of New York," Def. Mem. of Law, Dkt. 26 at 9; Def. Reply Mem. of Law, Dkt. 32 at 2, are belied by the express terms of the Guaranty's choice-of-law provision.

## II.    The Guaranty is Valid and Enforceable Under New York Law[3]

Having held that New York law governs disputes regarding the validity and enforceability of the Guaranty, the Court turns now to Defendant's alternative argument that the Guaranty is unenforceable under New York law.  Def. Mem. of Law, Dkt. 26 at 9.  Defendant argues that the Guaranty, and its provisions regarding personal jurisdiction and service of process, are unenforceable under New York law because Mr. Skaterschikov lacked authority to sign the Guaranty on behalf of The Native, S.A.  *Id.*  The Court disagrees.

Under general principles of agency, an agent has "the power . . . to do an act or to conduct a transaction on account of the principal which, with respect to the principal, he is privileged to do because of the principal's manifestations to him."  *Minskoff v. Am. Exp. Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996) (quoting *Restatement (Second) of Agency* § 7 cmt. a (1958)).  An agent's authority "may be express or implied, but in either case it exists only where the agent may reasonably infer from the words or conduct of the principal that the principal has consented to the agent's performance of a particular act."  *Id.*  Even if an agent lacks actual authority, "he may still be imbued with the authority to bind the principal through the doctrine of apparent authority."  *Themis Cap., LLC v. Democratic Republic of Congo*, 881 F. Supp. 2d 508, 522 (S.D.N.Y. 2012).  Apparent authority "arises from the written or spoken words or any other conduct of the principal which, reasonably interpreted, causes [a] third person to believe that the principal consents to have [an] act done on his behalf by the person purporting to act for him."  *Minskoff*, 98 F.3d at 708 (internal citation omitted); *Highland Cap. Mgmt. LP v. Schneider,* 607 F.3d 322, 328 (2d Cir. 2010).  To prove that an agent has apparent authority, the plaintiff must establish that "(1) the principal was responsible for the appearance of authority in

---

[3] The Court notes that, should this case proceed to trial, Plaintiff will have to prove that Mr. Skaterschikov acted with actual or apparent authority.

6

the agent to conduct the transaction in question and (2) the third party reasonably relied on the representations of the agent." *Star Funding, Inc. v. Tire Centers, LLC*, 717 F. App'x 38, 41 (2d Cir. 2017) (quoting *Herbert Constr. Co. v. Cont'l Ins. Co.*, 931 F.2d 989, 993-94 (2d Cir. 1991)) (internal citations and quotation marks omitted).

Here, Plaintiff adequately alleges that Mr. Skaterschikov had apparent authority to sign the Guaranty. By appointing Mr. Skaterschikov as "Chairman" of the company, Defendant imbued him with apparent authority to act on its behalf. *See Restatement (Third) Of Agency* § 3.03 (2006) ("A principal may also make a manifestation [regarding agent's apparent authority] by placing an agent in a defined position in an organization or by placing an agent in charge of a transaction or situation."); *F.D.I.C. v. Providence Coll.*, 115 F.3d 136, 140 (2d Cir. 1997) (district court's conclusion that defendant vested agent with "apparent authority to sign the loan guaranties" by, *inter alia*, giving him the title of "Vice President for Business Affairs" was adequately supported); *First Fidelity Bank v. Gov't of Antigua,* 877 F.2d 189, 193 (2d Cir. 1989) ("The appointment of a person to a position with generally recognized duties may create apparent authority"); *Allied Sheet Metal Works v. Kerby Saunders, Inc.,* 619 N.Y.S.2d 260, 262 (1st Dep't 1994) (vice president has "at least apparent authority to bind the corporation").[4] Plaintiff also adequately alleges that it reasonably relied on Mr. Skaterschikov's apparent

---

[4] Defendant's reliance on *Greene v. New Dana Perfumes Corp.,* 287 B.R. 328, 340 (D. Del. 2002) is misplaced. In *Greene,* the court held, *inter alia,* that an agent, purportedly acting as defendant's president, lacked apparent authority to bind the defendant because there was no evidence that the agent was "ever a director, officer, employee or agent" of defendant. 287 B.R. at 340. Here, by contrast, Defendant does not dispute that Mr. Skaterschikov was its Chairman. Instead, the declarations submitted in support of Defendant's motion merely state that Mr. Skaterschikov did not have *actual* authority to sign the Guaranty and that Defendant's board of directors never knew about the Guaranty. *See* Dkt. 26, Exs. 2, 5, 6; Dkts. 33-34. Defendant's purported obliviousness of the Guaranty and Mr. Skaterschikov's purported lack of actual authority to sign the Guaranty are, however, irrelevant to whether Mr. Skaterschikov acted with *apparent* authority. Mr. Skaterschikov's undisputed title of "Chairman" imbued him with apparent authority to sign the Guaranty and to bind Defendant.

authority to sign the Guaranty.[5]  *In re Zaffron*, 303 B.R. 563, 571 (Bankr. E.D.N.Y. 2004) ("Under the theory of agency, the fact that [agent] held the title of Vice President of Operations [] cloaked him with the appearance of authority, upon which third parties had a right to rely."); *Indosuez Int'l Fin. B.V.*, 98 N.Y.2d at 246 (holding that plaintiff reasonably relied on the apparent authority of defendant's "deputy chairperson" to sign contract on defendant's behalf); *United States v. Inc. Vill. of Island Park*, 888 F. Supp. 419, 437 (E.D.N.Y. 1995) ("Apparent authority is the authority which outsiders would normally assume the agent to have, judging from his position with the corporation and the circumstances of his conduct.").

In sum, because Mr. Skaterschikov had apparent authority to sign the Guaranty, Defendant is legally bound by the terms of the agreement.[6]  *Themis Cap., LLC*, 881 F. Supp. 2d at 522 ("It is well settled under New York law that an agent may 'bind his principal to a contract if the principal has created the appearance of authority, leading the other contracting party to reasonably believe that actual authority exists.'") (citing *Highland Cap.,* 607 F.3d *at* 328).

---

[5] The Court also notes that Mr. Skaterschikov was represented by Mr. Zukerman, who Defendant introduced to Plaintiff as its attorney, throughout the negotiation and execution of the Guaranty.  *See* Dkt. 28, Ex. 3 (email from Defendant's Founder and Executive Board Member to Plaintiff stating: "Here's an introduction to our attorney, Mr. Zukerman.").  Mr. Zukerman approved the final version of the Guaranty before Mr. Skaterschikov signed it, and he notarized Mr. Skaterschikov's signature.  *See* Dkt. 28, Exs. 4-5; Compl., Ex. 1.  Defendant's counsel's presence and involvement during and after the execution of the Guaranty contributed to Plaintiff's reasonable belief that Mr. Skaterschikov had, at the very least, apparent authority to sign the Guaranty.

[6] The Court rejects Defendant's argument that Plaintiff had a duty to "inquire regarding the scope of Mr. Skaterschikov's authority."  Def. Reply Mem. of Law, Dkt. 32 at 5.  A plaintiff "does not have a duty to inquire into the scope of an apparent agent's authority unless the transaction is extraordinary or novel."  *Adler v. Solar Power, Inc.*, No. 16-CV-1635, 2018 WL 1626162, at *7 (S.D.N.Y. Mar. 30, 2018) (citing *Herbert Constr. Co.,* 931 F.2d at 995-96).  There was nothing "extraordinary or novel" about this transaction; the fact that Defendant was a Swiss corporation does not make the transaction itself novel or extraordinary.  *See* Def. Reply Mem. of Law, Dkt. 32 at 5.

Moreover, Defendant does not argue that it ever raised concerns about the validity of the Guaranty after Mr. Skaterschikov signed it on March 13, 2018.  In fact, on April 27, 2018, after the Sublease, which included the Guaranty as an exhibit, was fully executed, Izabela Depczyk, Defendant's Founder and Executive Board Member, emailed Plaintiff saying: "Thank you all for working tirelessly to make this happen! We are so excited to move into our new space."  Dkt. 28, Ex. 4 at 1; *see also* Dkt. 29, Ex. 3.  Accordingly, Defendant's arguments that Plaintiff unreasonably relied on Mr. Skaterschikov's apparent authority to sign the Guaranty, "ignored red flag warnings," or "sought to obtain [the] guarantee by stealth" are nonsensical.  *See* Def. Mem. of Law, Dkt. 26 at 5; Def. Reply Mem. of Law, Dkt. 32 at 5.

### III.     The Native Consented to Jurisdiction and Waived Service of Process

As noted *supra,* to defeat a motion to dismiss for lack of personal jurisdiction prior to discovery, a plaintiff "need only allege facts constituting a *prima facie* showing of personal jurisdiction." *PDK Labs, Inc.*, 103 F.3d at 1108.  A plaintiff may establish personal jurisdiction by alleging that the defendant "agree[d] in advance to submit to the jurisdiction of a given court."  *Nat'l Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311, 315–16 (1964); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 n.14 (1985) (noting that where "forum-selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust, their enforcement does not offend due process." (citations and internal quotation marks omitted)); *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements.").  Similarly, parties "are free to contractually waive service of process."  *Alfred E. Mann Living Tr. v. ETIRC Aviation S.a.r.l.,* 910 N.Y.S.2d 418, 421 (1st Dep't 2010) (explaining that, "by definition, such waivers render inapplicable the statutes that normally direct and limit the acceptable means of serving process on a defendant" and preclude "the defendant from successfully challenging the court's jurisdiction over him.").

Here, Plaintiff alleges that Defendant consented to the Court's personal jurisdiction through the Guaranty's forum selection clause.  Compl. ¶ 4; Compl., Ex. 1 at 4.  The Court agrees.  The Guaranty provides that Defendant "irrevocably consents and submits to the jurisdiction" of, *inter alia*, any federal court in New York with respect to any action brought against it by Plaintiff "concerning any matters arising out of or in any way relating to [the] Guaranty."  *Id.*  Accordingly, Defendant's motion to dismiss for lack of personal jurisdiction necessarily fails.  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.,* 722 F.3d 81, 85 (2d Cir. 2013) (holding that the court "need look no further" than the letter in which defendant "consented to

'submit to personal jurisdiction in the City and State of New York for any claim or action arising from this transaction'" to establish personal jurisdiction); *Indosuez Int'l Fin. B.V.*, 98 N.Y.2d at 248 (exercising personal jurisdiction over defendant because the agreement included an "express submission to New York jurisdiction"). Similarly, the Guaranty provides that Defendant "irrevocably waives personal service of any summons and complaint" and consents to service of process upon its attorneys, Zukerman Gore Brandeis & Grossman, LLP. Compl., Ex. 1 at 4. Because Plaintiff timely served the summons and complaint on Mr. Zukerman, Defendant's motion to dismiss for improper service also fails. *See* Dkt. 7.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED. Defense counsel is directed to file a notice of appearance by **March 19, 2021**. No later than **April 2, 2021**, the parties must submit a proposed case management plan consistent with the Undersigned's individual practices.

The Clerk of Court is respectfully directed to close the open motion at docket entry 26.

**SO ORDERED.**

Date: March 5, 2021            _____
New York, New York         **VALERIE CAPRONI**
                                                 **United States District Judge**